UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL ALLEN HOLLEY,                                   Case No. 18-13140-t13

    Debtor.

OPINION

Before the Court are cross motions for summary judgment on the trustee's objections to the debtor's claim of exemption relating to settlement funds he received from a personal injury lawsuit. Debtor claims that the proceeds (some of which is in a bank account, but most of which was used to buy a house) is compensation for lost future earnings. The trustee counters that there is no evidence of that. As discussed below, genuine issues of material fact preclude summary judgment for either party, so their motions will be denied.

I.      Facts

For the purpose of ruling on the motions, the Court finds that the following facts[1] are not in material dispute:

On December 19, 2018, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor filed his Schedule C on January 9, 2019, claiming, inter alia, an exemption of $150,000 on his residential property-- 132 Los Cordovas Road (the "Cordovas exemption"), and an exemption of $22,903.23 on his Wells Fargo Bank account (the "bank account exemption"). On January 15, 2019, the Trustee filed an objection to these exemptions.

---

[1] The Court took judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

The Debtor filed an Amended Schedule C on March 13, 2019, on which he reasserted the Cordovas exemption and the bank account exemption, and claimed a further exemption of $24,200 for a 2005 Bentley Continental GT (the "Bentley exemption"). On March 21, 2019, the Trustee filed an objection to the exemptions reflected in the Debtor's Amended Schedule C—including the Cordovas exemption, the bank account exemption, and the Bentley exemption (collectively the "exemptions").

The debtor claimed the exemptions pursuant to 11 U.S.C. Section 522(d)(11) which, in relevant part, permits a debtor to claim exemptions in property that is traceable to . . .

> (D) a payment, not to exceed $23,675, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or
>
> (E) a payment in compensation of loss of future earnings of the debtor . . . for the support of the debtor and any dependent of the debtor.

As grounds for his objection, the Trustee asserted that "[u]pon information and belief" the money used to purchase the Bentley and the Cordovas property was not money to compensate the Debtor for loss of future earnings, and the money in the bank account was not a payment on account of personal bodily injury of the Debtor or his dependent.

Now, each party seeks summary judgment concerning the validity of the exemptions. The Trustee argues that based on the purported undisputed material facts, the Cordovas Exemption and the Bentley exemption[2] are not permissible under § 522(d)(11)(E). Conversely, the Debtor argues that the purported undisputed material facts demonstrate that each of the exemptions are allowable under § 522(d)(11).[3] In support of their opposing positions, both parties rely primarily on evidence

---

[2] The Trustee does not make any argument about the bank account exemption.
[3] The Debtor argues that § 522(d)(11)(D) allows the bank account exemption and that § 522(d)(11)(E) allows the Bentley exemption and the Cordovas exemption.

related to a lawsuit commenced by the Debtor in 2012 in Orange County California that resulted in a $1,600,000 settlement. The lawsuit arose from a work-place accident which caused permanent physical injuries to the Debtor.

The settlement funds at issue stem from the Debtor's involvement in a work place accident. While working on the premises of an automobile auction in January 2012, the Debtor was crushed between two vehicles causing injuries to his legs, his left arm, his shoulder and his back. He was diagnosed with complex regional pain syndrome and/or neuropathic pain—a chronic condition that will never heal. After his workman's compensation claim was denied, the Debtor sued his employer in the Orange County California Superior Court for property damage, personal injury, and general negligence. In his complaint, the Debtor sought compensatory damages for personal injury and property damage, wage loss, and a loss of earning capacity. According to the Debtor, he will "never be able to return to the full income earning ability [that he] previously enjoyed."[4] The Debtor settled his claims for a lump sum of $1.6 million.

The settlement agreement does not expressly apportion damages to specific claims. And because the lawsuit settled without the Court's intervention, the record from the California Superior Court does not contain findings of fact or conclusions of law. The parties have submitted documents related to the litigation on which they rely to support their respective motions as follows.

Edmond El Dabe—the Debtor's counsel in the California lawsuit stated in an affidavit that "a portion of the settlement was for future loss of earnings." An accounting of the settlement proceeds shows that of the $1.6 million, $640,000 was consumed by attorney's fees; $43,234.29

---

[4] This fact is included in the Trustee's statement of undisputed material facts and is derived from the Debtor's answer to the Trustee's interrogatories.

was consumed by costs; and $77,476.12 was consumed by outstanding medical bills. The Debtor's net recovery from the settlement was $839,289.59.

Dr. Joshua Prager—a medical expert who evaluated the Debtor's injuries opined in a deposition that *if* the Debtor's course of medical treatment was successful "he'd be able to work at least a desk job" subject to certain limitations.[5] Dr. Prager declined in this deposition to offer an opinion on the issue of whether the Debtor could return to his previous occupation in the automobile auction business.

Before he was injured, Debtor was earning approximately $5,000 per month, plus bonuses, in the automobile auction business. Earlier in his career, the Debtor worked as a deputy sheriff, a security officer, a fire fighter, a restaurant manager, and a business owner. His education consists of training and certifications related, primarily to law enforcement and firefighting; he does not possess a college degree. From January 2016 and continuing through the date of his bankruptcy petition, the Debtor owned at least a 50% membership in two businesses—Vape Durango, LLC and Vape Taos, LLC, and he had some involvement in managing the operation of these businesses.

## II.    Discussion

A.    <u>The Governing Legal Standards</u>. [S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary

---

[5] The Debtor does not dispute this fact, but he disputes its materiality. The Court includes this fact in the statement of undisputed material facts because it, like others challenged by the Debtor as immaterial, is foundational to the Trustee's arguments.

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The present motion is governed, substantively, by § 522(d)(11) of the Bankruptcy Code. An exemption under § 522 is presumed valid and a trustee who objects to an exemption bears the initial burden of producing evidence to overcome the presumption that the exemptions are properly claimed. *In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003); Fed. R. Bankr. P. 4003(b)(2), (c). If the trustee carries this burden, the burden shifts to the debtor who must produce evidence demonstrating that the claimed exemptions were proper. *Robinson*, 295 B.R. at 152. Exemption laws are "liberally construed in favor of the claimant of an exemption." *In re Carlson*, 303 B.R. 478, 482 (10th Cir. BAP 2004) (recognizing the "humanitarian purposes" of the exemption laws).

    B.    <u>The Trustee's Motion for Summary Judgment</u>. The Trustee argues that the Bentley exemption and the Cordovas exemption are impermissible as a matter of law because the settlement agreement did not allocate a particular sum as compensation for the Debtor's loss of future earnings. He reasons that these exemptions would be allowable under § 522(d)(11)(E) only if the settlement agreement showed that the settlement funds—or a sufficient portion thereof—was expressly allocated to compensate the Debtor for a loss of earnings *after* December 19, 2019—the date on which the Debtor filed his Bankruptcy petition. The Trustee argues, further, that because the Debtor has demonstrated an ability to work—*i.e.*, by managing the vape shops, and because Dr. Prager opined that the Debtor could work at a desk job, the Debtor cannot prove that any portion of the settlement constituted compensation for loss of future earnings.

In support of his argument, the Trustee relies on *In re Jackson*, 593 F.3d 171 (2d Cir. 2010) for the proposition that "[t]o be a loss of future earnings . . . within the meaning of

[§ 522(d)(11)(E)], the payment must be for loss of earnings after the petition date." Although the Court does not disagree with *Jackson*'s reasoning or its holding, the Trustee's reliance on *Jackson* is not persuasive in the context of the Trustee's motion for summary judgment.

In *Jackson*, the debtor, having been terminated from employment, was performing work for his former employer under a one-year contract. *Id.* at 173. At the same time, however, the debtor was pursuing a lawsuit against his former employer for wrongful termination, claiming that he had been terminated in retaliation for whistle-blowing. *Id.* Six months into his one-year contract term, the debtor's former employer stopped sending contract work to him and, accordingly, stopped paying him under the contract. *Id.* Around the same time that his contract work was cut off, the debtor filed for bankruptcy and claimed an exemption in the then-unknown value of the wrongful termination claim under § 522(d)(11)(E) for "lost future earnings." *Id.* In a settlement of the wrongful termination lawsuit, the debtor's former employer "essentially bought out [the debtor's] contract . . . paying him most of what he would have earned in the one-year period following his termination, minus the amount actually paid to him during that period as an independent contractor." *Id.* at 174. The debtor amended his bankruptcy schedule listing the settlement sum ($135,000 which included $5,000 designated for attorney's fees) as lost future earnings, exempt under § 522(d)(11)(E). *Id.* at 174.

Ultimately, over the objections of the trustee—who maintained that no portion of the settlement could be exempted, the bankruptcy court determined that $30,690—a sum that accounted for what the debtor would have earned under the contract in the months after his petition was filed, was properly exempted. *Id.* In support of its holding, the court reasoned that under § 522(d)(11)(E), "the earnings exempted *must account for a period in the future from the date the estate is created*." *Id.* at 174-75 (emphasis added). The debtor appealed this ruling to the district

court (which affirmed the holding) and, finally, to the Second Circuit Court of Appeals. The Second Circuit held that the bankruptcy and district courts had "correctly interpreted 'loss of future earnings' in [§ 522(d)(11)(E)] as referring to lost earnings for post-petition periods and not for periods prior to the filing of the bankruptcy petition." *Id.* at 177.

The Court is not persuaded that applying the *Jackson* court's reasoning to the facts of this case supports summary judgment in favor of the Trustee. Unlike *Jackson*—in which the settlement was intended to compensate the debtor for a discrete one-year period of lost earnings, encompassing a discernable number of months pre-dating the debtor's bankruptcy petition, and a discernable number of months post-dating the debtor's bankruptcy petition, here the Debtor's settlement was, according to Mr. El Dabe, intended to compensate the Debtor for "future loss of earnings"[6] of an indefinite duration. Based upon the Debtor's complaint, the sum of the settlement, and Mr. El Dabe's affidavit, a reasonable jury could find that a portion of the settlement was intended to compensate the Debtor for a loss of future earnings beyond the date on which his bankruptcy petition was filed.

The Trustee's additional arguments are unavailing. The Trustee argues that because the settlement agreement did not expressly apportion damages to the Debtor's claims, the Debtor cannot demonstrate that any portion of the settlement was compensation for loss of future earnings. In his complaint, the Debtor claimed damages for lost earnings and lost earning capacity; and, by its terms, the lump-sum settlement agreement resolved "all issues, claims, [and] complaints" raised by the Debtor. Of the $1.6 million, $77,476.12 was consumed by outstanding medical bills. A sum in excess of $1.5 million is, therefore, untethered to any specific claim.

---

[6] Because the debtor claimed damages not only for lost wages, but also for a loss of earning capacity, Mr. El Dabe's use of the ambiguous phrase "future loss of earnings" could imply future lost wages and/or a lost or reduced earning capacity.

Lump-sum settlements "awarded to compensate a broad range of damages . . . not specifically allocated to any particular" claim frequently arise in the context of Section 522 exemptions. *In re Bova*, 205 B.R. 467, 476 (Bankr. E.D. Pa. 1997). A debtor's claim that a portion of such a settlement is exempt under Section 522's "future earnings" provision is presumed valid; and to prevail in an objection to an exemption, the trustee must prove, by a preponderance of the evidence, that the exemption is invalid. *In re Pequeno*, 126 F. App'x 158, 163 (5th Cir. 2005). *Bova*, 205 B.R. at 477-78; *In re Mann*, 201 B.R. 910, 915 (E.D. Mich. 1996). A trustee cannot carry this burden by resorting to, or calling for the court's, speculation on the matter. *See In re Yelverton*, 2013 WL 6405691, *3 (Bankr. D.D.C. 2013) "(A trustee who objects to a [Section] 522(d)(11)(E) exemption of settlement proceeds fails to meet this burden if the court has to speculate as to how the settlement proceeds were allocated."); *In re Whitson*, 319 B.R. 614, 618 (E.D. Ark. 2005) (holding that because the court could only speculate as to the proper portion of a settlement represented a loss of future earnings, the trustee had not met his burden of proof that the proceeds of the settlement were not properly exemptible as loss of future earnings); *In re Miller*, 36 B.R. 420, 421 (Bankr. D.N.M. 1984) (holding that because the trustee had adduced no evidence contradicting the debtor's characterization of a settlement as compensation for the loss of future earnings, the debtor's position must be accepted).

Contrary to the Trustee's argument, the fact that Dr. Prager opined that that the Debtor may be able to work at a "desk job," and the fact that the Debtor has demonstrated capacity to work is not proof that the lump-sum settlement excluded compensation for loss of future earnings. Nor do these facts prove that that the sums at issue in the Bentley exemption and the Cordovas exemption are not traceable to loss-of-future-earnings compensation. Before the injury that led to his lawsuit, the Debtor was making at least $5,000 per month—approximately $60,000 per year (more than

Case 18-13140-t13    Doc 139    Filed 09/09/19    Entered 09/09/19 11:39:10 Page 8 of 11

that with bonuses) in the automobile auction business. Dr. Prager offered no opinion on the matter of whether the Debtor could return to this business, and considering the Debtor's education (which consists primarily of law-enforcement related training) and his work experience, Dr. Prager's allusion to the *possibility* that the Debtor could work in a "desk job" does not support the notion that the settlement was not intended to compensate the Debtor for loss of future earnings.[7] *See, e.g. Whitson*, 319 B.R. at 618 (rejecting a trustee's objection to an exemption under Section 522(d)(11)(E) in which the debtor had obtained a settlement partially attributable to lost earnings, which attribution the debtor supported by presenting testimony from her physician that she could not return to her previous job where she was earning a specific salary); *In re Territo*, 36 B.R. 667, 671 (Bankr. E.D.N.Y 1984) (holding that the fact of a continuing disability that would likely prohibit the debtor from returning to his previous position supported a reasonable conclusion that "most, if not all of the money" could be attributed to lost earnings). Moreover, the fact that the settlement agreement was intended to resolve *all* the Debtor's claims necessarily supports a finding that at least some portion of the settlement was intended to compensate the Debtor for wage loss and a loss of earning capacity. Finally, the fact that the Debtor has demonstrated an ability to work—a circumstance that developed well after the settlement agreement was reached, simply does not bear on the issue whether any, or all, of the lump-sum settlement was intended to compensate the Debtor for future lost wages. This fact is, therefore, immaterial.

    C.    <u>The Debtor's Motion for Summary Judgment</u>. In his motion for summary judgment, the Debtor argues that there is no genuine issue of material fact and he is entitled to

---

[7] The Debtor's lawsuit was filed in September 2012, and his Bankruptcy petition was filed in December 2018—the Debtor's $5,000 per month salary would have afforded him approximately $315,000 in wages in the years before he filed his bankruptcy petition. A reasonable jury could conclude that some portion of the remaining unallocated settlement funds were intended as compensation for lost future earnings after December 2018.

judgment as a matter of law that the exemptions are valid. For the reasons already discussed, the undisputed facts do not conclusively demonstrate that the to the Bentley exemption and the Cordovas exemption are valid. That is, while it is undisputed that *some* portion of the Debtor's lump-sum settlement was allocated to future lost earnings, genuine issues of material fact remain as to what portion of the settlement was so allocated, and whether the sums represented in the Cordovas and Bentley exemptions are traceable to that sum.

As to the bank account exemption, the Debtor states that it is undisputed that $22,903.23 contained in his bank account constitutes a portion of the settlement that was paid on account of personal injury and is, therefore, exempt under § 522(d)(11)(D). In support of his assertion that this fact is undisputed, the Debtor relies on his *Schedule C* and his Amended *Schedule C*, and on the fact of his personal injury claim in the underlying lawsuit.[8]

While the Debtor's exemptions are presumed valid in the context of § 522(d)(11)(D), the Debtor's *ipse dixit* assertion that the funds in the bank account were compensation for personal injury is not persuasive in the context of a motion for summary judgment. This is particularly so in the context of this case—where the Trustee's motion for summary judgment is premised on the undisputed fact that the lump-sum settlement did not expressly allocate the funds. Considering that the Debtor's underlying lawsuit included a personal injury claim and considering that that the lump-sum settlement resolved all claims, it is beyond reasonable debate that at least *some* portion of the settlement was intended to compensate the Debtor for personal injury. However, the Court having concluded that there is a genuine issue of fact as to what portion of the lump-sum settlement constituted compensation for lost future earnings the Court cannot reasonably conclude, based on

---

[8] The Trustee did not respond to the Debtor's Motion, and the time within which the Trustee could file a timely response has now passed.

the same evidence, that $22,903.23 of the lump-sum settlement was certainly compensation for the Debtor's personal injury.

### III. Conclusion

The evidence and arguments presented by the parties preclude summary judgment in favor of either party. Genuine issues of material fact concerning the allocation of the lump-sum settlement—particularly what portion of the settlement was allocated for future loss of earnings, and what portion of the settlement was allocated to compensate the Debtor for personal injury—must be resolved by a fact finder. Until then, the legal question whether the exemptions are valid cannot be resolved. As such, each party's motion for summary judgment shall be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 9, 2019

Copies to: counsel of record