UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL ALLEN HOLLEY,                                   Case No. 18-13140-t13

         Debtor.

**OPINION**

       Before the Court are objections to several of the Debtor's claimed exemptions. For three of the claimed objections, the issue is whether the property claimed to be exempt is traceable to payments for personal bodily injury or loss of future earnings. Also disputed is whether certain limited liability companies may be exempted under Debtor's "wild card" exemption. For the reasons set out below, the Court will sustain all of the objections.

I.      FACTS

The Court finds:[1]

Debtor was injured in California on January 18, 2012. He filed a chapter 7 bankruptcy case in this district on July 11, 2012, case no. 12-12608-ts7 (the "2012 Bankruptcy Case"). Debtor filed his schedules and statement of financial affairs on the petition date. He did not list a personal injury claim on his Schedule B. Instead, he included the following at the bottom of Schedule I, in response to the request to "Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:"

> Debtor was hit by a car from behind and pinned between two cars in early 2012. He had to have surgery on his arm from the fall he took after the car backed up an

---

[1] The Court took judicial notice of the docket in this case, Debtor's prior bankruptcy case, no 12-12608, and the Donnie Brainard bankruptcy case, no. 17-11254. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

[sic] he hit the ground. His forearm muscle has ripped in two right in the center so the operation to repair any damage was futile.

Debtor is not working right now, but [sic] Debtor is able to, he intends to apply for employment.[2]

Debtor also made the following disclosure in response to question 2 of his Statement of Financial Affairs:

| AMOUNT | SOURCE |
|---|---|
| $6,291.23 | 2012: Public service mutual insurance worker's Compensation |

Debtor filed a personal injury lawsuit in California Superior Court on September 5, 2012, styled *Michael Allen Holley v. Mannheim Investments, Inc. and Ruben Mendez*, no. 30-2012-005956860-CU-PA-CJC (the "Personal Injury Action"). Two weeks later, the case trustee filed a report of no distribution, stating inter alia that "there is no property available for distribution from the estate over and above that exempted by law." An order discharging Debtor was entered November 29, 2018, and the case was closed December 7, 2012.

On or about April 22, 2014, Debtor settled the Personal Injury Action for $1,600,000. Debtor's share of the settlement was $839,289.59. With it Debtor bought, for about $300,000, a house with a street address of 132 Los Cordovas Road, Ranchos de Taos, New Mexico (the "House"). He then conveyed a one-half interest in the House to his wife as her sole and separate property. The dates of the purchase and the conveyance of the one-half interest are not in the record.

Debtor also used his settlement money to buy a 2005 Bentley Continental (the "Bentley"). The purchase price is not in the record. The Bentley is not currently drivable and has not been used by Debtor for several years. Debtor estimates its current value at $24,200.

---

[2] In discovery, Debtor claimed that he suffered injuries to his "legs, left arm and shoulder and back."

Finally, $22,903.23 of the settlement proceeds are in a Wells Fargo bank account (the "Bank Account").

After settling the Personal Injury Action, Debtor moved to the House and opened a "vape shop" in Taos. Generally, vape shops sell a variety of vaporizers and nicotine-infused liquids. The liquids are vaporized and inhaled as a substitute for cigarettes, pipes, cigars, and other tobacco-related products. Nicholas Donald Brainard ("Brainard") and Debtor were 50% members in a New Mexico limited liability company, Vape Taos, LLC. They also opened a vape shop in Durango, Colorado, using a Colorado limited liability company, Vape Durango, LLC (together with Vape Taos, LLC, the "LLCs").

The vape shop in Durango opened in January 2016. The Taos vape shop opened earlier, but the record does not indicate when.

Business arrangements between Brainard and Debtor were loose and informal. In general, Brainard provided the bulk of the start-up and operating capital, while Debtor managed the shops. Debtor's wife, Maria Holley, prepared tax business returns for 2016 and 2017. Ms. Holley also did some bookkeeping for the businesses.

Brainard became disenchanted with his partnership with Debtor and decided to part company. Although not a lawyer, Brainard prepared a document entitled Purchase of Business Agreement. Attached to the agreement is a form of promissory note, also drafted by Brainard. Together, the agreement and note provide that Brainard would retain his membership interests in the LLCs until Debtor paid the note in full.

Debtor fell behind in paying the note almost immediately. He never caught up. Brainard attempted to get Debtor to pay the note as agreed, but to no avail. Debtor's last payment on the note was in April or May 2017.

-3-
Case 18-13140-t13    Doc 154    Filed 10/04/19    Entered 10/04/19 16:05:55 Page 3 of 13

On May 17, 2017, Brainard filed a chapter 7 case. Edward A. Mazel was appointed the case trustee (the "Brainard Trustee").

The Brainard Trustee sued Debtor to collect the note. On October 18, 2018 the Court entered a judgment in the Brainard Trustee's favor and against Debtor for $91,465.25.

Debtor did not pay the judgment or any part thereof. Instead, on December 19, 2018, he filed this bankruptcy case as a chapter 7 bankruptcy case. After realizing that he was ineligible for a chapter 7 discharge because of his discharge in the 2012 Bankruptcy Case, Debtor filed a motion to convert his case to a chapter 13 case. The Court granted the motion.

On Schedule C, Debtor claimed the House, the Bentley, the Bank Account, and the LLCs as exempt. The Brainard Trustee objected. The matter has been fully briefed and tried.

II. DISCUSSION

A. The Burden of Proof.

Exemptions claimed by debtors are presumed valid. § 522(l) ("unless a party in interest objects, the property claimed as exempt on such list is exempt"). The objecting party bears the burden of proving an exemption is not properly claimed. *In re Hode*, 402 F.3d 1005, 1010 (10th Cir. 2005); *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003); Fed. R. Bankr. P. 4003(c) ("the objecting party has the burden of proving that the exemptions are not properly claimed"). In the Tenth Circuit, this means that "[i]nitially . . . the objecting party has the burden of production and persuasion. If the objecting party can produce evidence to rebut the exemption, the burden then shifts back to the debtor to come forward with evidence to demonstrate that the exemption is proper." *Gregory v. Zubrod (In re Gregory)*, 245 B.R. 171, 174 (10th Cir. BAP 2000), citing *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); *see also In re Robinson*, 295 B.R. 147, 152 n.13 (B.A.P. 10th Cir. 2003) (citing and following *Gregory*). The burden of

persuasion remains with the objecting party. *Carter*, 182 F.3d at 1029 n. 3; *In re Moneer*, 188 B.R. 25, 28 (Bankr.N.D.Ill.1995); Fed. R. Evid. 301. An objector cannot carry his burden by resorting to speculation. *In re Whitson*, 319 B.R. 614, 618 (E.D. Ark. 2005).[3]

B.  <u>Did the Settlement Proceeds Belong to the Debtor?</u>

The Court must determine as a preliminary matter whether Debtor owned the personal injury claim when he settled it for $1.6 million. Although Debtor was injured on January 18, 2012, he did not list a personal injury claim on Schedule B filed in the 2012 Bankruptcy Case. Instead, he mentioned the accident in response to a question at the bottom of Schedule I (Income).

The question is whether the trustee in the 2012 Bankruptcy Case abandoned the personal injury claim to Debtor, thereby giving him standing to sue on or settle the claim. Abandonment can occur in one of two ways. Under § 554(a):

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

Unquestionably, that did not happen. Alternatively, property can be "deemed" abandoned under § 554(c):

> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

Section 521(a)(1) provides:

> (a) The debtor shall--
>     (1) file--
>         (A) a list of creditors; and
>         (B) unless the court orders otherwise--
>             (i) a schedule of assets and liabilities;

---

[3] Placing the burden of proof on the objecting party has been criticized in cases like this one involving personal injury settlement proceeds. *See, e.g., In re Yelverton*, 2013 WL 6405691, *3 (Bankr. D.D.C. 2013) (placing the burden on the trustee requires him to prove a negative; *In re Bova*, 205 B.R. 467, 476 (E.D. Pa. 1997) (recognizing that the issue of an unallocated lump sum settlements frequently arises in the context of Section 522 exemptions).

> (ii) a schedule of current income and current expenditures;
> (iii) a statement of the debtor's financial affairs . . . .

Finally, Bankruptcy Rule 1007 provides:

> (b) Schedules, statements, and other documents required
> (1) Except in a chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Forms, if any:
> (A) schedules of assets and liabilities;
> (B) a schedule of current income and expenditures;
> (C) a schedule of executory contracts and unexpired leases;
> (D) a statement of financial affairs;
> (E) copies of all payment advices . . . .; and
> (F) a record of any interest that the debtor has in an account or program of the type specified in § 521(c) of the Code.

Debtor did not list the personal injury claim on Schedule B, as required by § 521(a)(1)(B)(i), Bankruptcy Rule 1007(b)(1)(A), and the Official Form in use at the time.

The case law construing § 544(c) holds that only assets properly scheduled on schedules A or B can be deemed abandoned. *See*, *e.g., Ayazi v. N.Y.C. Bd. of Educ.*, 2006 WL 1995134, at *7 (E.D.N.Y. July 14, 2006) (claims that are not properly scheduled are not abandoned in accordance with Section 554(c)), *reversed on other grounds,* 315 Fed. App'x 313 (2d Cir. 2009); *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995); *Bittel v. Yamato Int'l Corp.*, 70 F.3d 1271, 1995 WL 699672, at *4 (6th Cir. 1995); *In re Pace,* 17 F.3d 395,1994 WL 55523, at *2 (9th Cir.1994); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991); *In re Ahearn*, 318 B.R. 638, 642-43 (Bankr. E.D. Va. 2003); *In re Munoz-Gonzalez*, 2001 WL 34076433, *3-4 (Bankr. C.D. Ill. Jan. 2001); *In re Kottmeier*, 240 B.R. 440, 443-44 (M.D. Fla. 1999).

The rationale for this rule, in addition to the plain meaning of the text, was discussed by the district court in *Ayazi*:

> before passage of Section 554, there was no statutory provision as to what constituted abandonment. Rather, "any clear showing of the trustee's intent to abandon was sufficient." [*Conklin v. St. Lawrence Valley Educ. Testing Council,*

> *Inc.*, 93-CV-984, 1994 WL 780898 (N.D.N.Y. Oct.31, 1994) (Report and Recommendation, Mag. J. Scanlon), *adopted by* Order, C.J. McAvoy, dated Mar. 8, 1995.] at *4. This practice, however, raised complex and difficult factual questions on proof of intent, which the passage of Section 554 meant to obviate. *See id.* The *Conklin* court explained:
>> "It would be neither desirable nor consistent with Section 554 to resolve abandonment questions by returning to the uncertain practice of attempting to determine the trustee's intentions ... [I]n order for property to be abandoned by operation of law pursuant to Section 554(c), the debtor must formally schedule the property before the close of the case. It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to Section 521(1).
>
> *Conklin*, 1994 WL 780898, at *4 (quoting *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26 (Bankr. W.D. Va. 1993)).

2006 WL 1995134 at *7.

If an asset is listed on the proper schedule, parties can argue about whether the description was adequate. *See*, *e.g., In re Furlong*, 660 F.3d 81, 83-84 (1st Cir. 2011) ("Claims for Breach of Contract (Andrew Donarumo et al.) with 'indeterminate' value" was adequate). "An asset is adequately scheduled if its description exhibits "reasonable particularization under the circumstances."" *Id.* at 87.[4]

At least with respect to personal injury claims and lawsuits, which have been and continue to be a real problem in this district, the Court agrees with and adopts the majority rule that a claim is not abandoned per § 554(c) unless it was listed on Schedule B. A decision from this district, *In re Hill*, 195 B.R. 147 (Bankr. D.N.M. 1996), has been described as the "lone opposition" to the majority rule. *Ayazi*, 2006 WL 1995134, at *7.[5] To the extent *Hill* reached a different conclusion,

---

[4] Avoidance claims under the trustee's "strong-arm" powers probably are subject to different rules than pre-petition state law claims owned by the debtor. *See*, *e.g.*, *West v. Jeppesen (In re Krachun)*, 2015 WL 4910241, at *6 (Bankr. D. Utah Aug. 2015).

[5] The characterization is fair, as *Hill* found a deemed abandonment under § 544(c) even though the asset (a claim) was not scheduled. However, it should be pointed out that the claim was disclosed on the statement of financial affairs, and the trustee's notice of abandonment included assets "listed on the *statements* and schedules filed in this case that have not been otherwise administered." 195 B.R. at 150-51 (italics in original).

the Court declines to follow it. It should be noted, however, that in this case, unlike in *Hill*, the personal injury claim was not mentioned in Debtor's statement of financial affairs; the trustee did not include statements in her "no asset" notice;[6] and there is no indication that the trustee in the 2012 Bankruptcy Case knew of Debtor's valuable personal injury claim. Had she known of it, she certainly would not have abandoned it. It would have been easy for Debtor to list the claim on Schedule B. Something as simple as "claim for personal injuries sustained January 18, 2012" would have sufficed.

The Court believes that the majority rule is consistent with the Bankruptcy Code and Rules and does not place an undue burden on debtors and/or their counsel. Listing all substantial assets on Schedule A/B is an important part of obtaining a bankruptcy discharge and is not too much to ask. The majority rule, furthermore, gives debtors an incentive to properly disclose their assets if they hope for an eventual abandonment of them.

Based on the foregoing, the Court concludes that the personal injury claim was not abandoned in the 2012 Bankruptcy Case. The claim therefore remains property of the estate in that case. Debtor never had standing to bring the Personal Injury Action, nor did he have any right to the settlement proceeds. Thus, the funds in Debtor's Bank Account and those traceable to the House and the Bentley were not compensation for personal injury or loss of future earnings. Rather, they are the ill-gotten gains of an innocent misrepresentation, at best, or a bankruptcy crime,[7] at worst. Creditors' objections to the exemptions traceable to the settlement proceeds must be sustained.

---

[6] On September 18, 2012, the entered the following on the docket: Assets Abandoned (without deducting any secured claims): $ 180000.00, Assets Exempt: $ 16841.00, Claims Scheduled: $ 1038297.08, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 1038297.08.

[7] 18 U.S.C. § 152(1).

C.  Even if Debtor Owned the Personal Injury Claim, Debtor's Exemptions Claims are Improper.

Debtor's claims of exemption must be disallowed even if Debtor owned the personal injury claim and was the proper recipient of the settlement proceeds.

1.  The House and Bentley. Debtor asserts that his interests in the House and the Bentley are exempt under § 522(d)(11)(E), which provides:

> (d) The following property may be exempted under subsection (b)(2) of this section:
> …
> (11) The debtor's right to receive, or property that is traceable to—
> …
> (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The Brainard Trustee argues that the House is not traceable to compensation for a "loss of future earnings." In support of this argument, the Brainard Trustee introduced into evidence, without objection, Debtor's complaint in the Personal Injury Action. The complaint seeks the following types of damages:

> Wage loss;
> Loss of use of property;
> Hospital and medical expenses;
> General damage;
> Property damage;
> Loss of earning capacity;
> Future medical expenses; and
> Future paid and suffering.

Debtor did not ask for damages for loss of future earnings. This is significant because damages for "loss of earning capacity" are different from damages for "loss of future earnings."

"Loss of earning capacity refers to the extent to which the injury interferes with [the] plaintiff's ability to draw higher earnings in the future by advancing to a better paying position or an alternative career." *Lewis v. Ukran*, 36 Cal. App. 5th 886, 891-92 (2019). In determining lost

-9-
Case 18-13140-t13    Doc 154    Filed 10/04/19    Entered 10/04/19 16:05:55 Page 9 of 13

earning capacity, "[t]he focus is not on what the plaintiff *would* have earned in the future, but on what [he] *could* have earned." *Id.* at 892 (italics in original). "[D]amages for loss of earning capacity may be awarded to persons who, at the time of the injury, were homemakers . . . , as well as persons who were retired or otherwise not working." *Licudine v. Cedars-Sinai Med. Ctr.*, 3 Cal. App. 5th 881, 894 (2016); *see also* Judicial Council of California Civil Jury Instruction 3903D (indicating that a jury must determine the value of lost earning capacity claim by comparing "what it is reasonably *probable*" that the plaintiff could have earned without the injury with what he can still earn in the future).

"To recover damages for future lost earnings, [the plaintiff] must prove the amount of [income/earnings/salary/wages he] will be reasonably certain to lose in the future as a result of the injury." Judicial Council of California Civil Jury Instruction 3903C). Loss of future earnings "must be proven with reasonable certainty." Damages in Tort Actions, § 10.02[5] (Matthew Bender). A lost future earnings claim is based, in part, on the plaintiff's present income. Kevin Dunne, *Dunne on Depositions in California*, § 8:2.

Section 522(d)(11)(E) exempts only property traceable to payments for loss of future earnings. It does not exempt payment for loss of earning capacity. As the two types of damages are distinct, it would be improper to allow an exemption based on loss of future earnings when the actual award was for loss of earning capacity.[8]

It is possible for a tort victim to seek both types of damages; asking for compensation for loss of earning capacity does not preclude an award for loss of future earnings. In this case, however, the Brainard Trustee showed that Debtor did not seek an award for loss of future

---

[8] "Absent a clearly expressed legislative intention to the contrary, [the plain statutory language] must ordinarily be regarded as conclusive." *Finley v. United States*, 123 F.3d 1342, 1347 (10th 1997).

earnings. The trustee's evidence was more than enough to rebut the presumption of validity and shift the burden of proof to Debtor to demonstrate that the claimed exemption was proper. Debtor made no effort to carry his burden; he declined to appear at trial and testify, and he did not call any witnesses (*e.g.* his California trial attorney) who might have been able to testify in favor of the exemption.

The Brainard Trustee carried his burden of proving that the House and Bentley exemptions should be disallowed.[9]

2. <u>The Bank Account</u>. Debtor claimed the Bank Account exempt pursuant to § 522(d)(11)(D), *i.e.* "The debtor's right to receive, or property that is traceable to . . . a payment . . . on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor . . . ." This subsection exempts payments made in compensation for, for example, the loss of an eye, hand, or limb. 4 Collier on Bankruptcy (16th Ed.) ¶ 522.09[11], note 118 and accompanying text.

In support of his objection to the exemption, the Brainard Trustee again relies on the complaint filed in the Personal Injury Action. None of the damage categories listed in the complaint come within this exemption. The closest one is "general damages," but the Court finds that it is not close enough. Further, Dr. Prager's deposition makes clear that Debtor suffered pain as a result of the injury and may have lost future earning capacity, but did not seek damages for "personal bodily injury" as that terms is used in § 522(d)(11)(D).

---

[9] The Bentley exemption is invalid for another reason as well: the Bentley is not drivable and has not been for several years. Instead, Debtor drives a Chevrolet Tahoe. The Bentley therefore cannot be said to be "reasonably necessary" for Debtor's support.

3. <u>Vape Shops LLCs Membership Interests</u>. Debtor claims an exemption in his interests in the LLCs on the basis that the interests have no value.[10] The Brainard Trustee objected, arguing that the LLCs generate income and have substantial, if unknown, value. In support of his objection, the Brainard Trustee submitted Vape Durango's federal income tax returns for the years 2017 and 2018, and Debtor's personal tax returns (which reflects income from Vape Taos) for 2018. This evidence demonstrates that in 2017 and in 2018 Vape Durango was not only profitable, but its income nearly doubled from one year to the next—earning $77,766 in 2017, and $148,080 in 2018. Noting, based on a national average, that businesses are generally sold at a price representing sixty percent of their gross revenue, the Brainard Trustee argues that Vape Durango is worth at least the sum required to pay the claim at issue in this case ($91,465.25) and is, more likely, worth upward of $100,000. Vape Taos was similarly successful—earning a gross profit of $80,000 in 2018, and providing Debtor with $47,500 in income in 2017, and $43,818 in income in 2018. While the Court will not attempt, on the evidence before it, to determine the value of the Vape Shops, the Trustee has demonstrated by a preponderance of the evidence that the value of the Vape Shops is greater than zero. The Brainard Trustee's objection to Debtor's zero-value exemption in the LLCs is sustained.

III. CONCLUSION

Debtor did not own the Personal Injury Action when he settled it and took the proceeds rightfully belonging to the trustee and his creditors. He cannot bootstrap that ill-gotten windfall

---

[10] Debtors interest in the Vape Shops, and the Nicholas Donald Brainard Bankruptcy Estate's $91,465.25 claim against Debtor in the present case, is discussed in greater detail in this Court's Opinion in *In Re Brainard*, 2018 WL 5099657 (D.N.M. Oct. 2018).

-12-
Case 18-13140-t13    Doc 154    Filed 10/04/19    Entered 10/04/19 16:05:55 Page 12 of 13

into legitimate exemptions. In any event, his claims of exemption fails on their own, for the reasons set out above. The Court will enter a separate order disallowing the claimed exemptions.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 4, 2019
Copies to: electronic notice recipients